No. 21-80036

---

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

---

RONALD G. DENICOLO, JR. and MICHAEL G. FOX, on behalf of themselves and others similarly situated,

*Plaintiffs-Respondents*,

v.

VIKING CLIENT SERVICES, LLC, d/b/a Viking Billing Service,

*Defendant-Petitioner*,

———————————————————

On Petition from the United States District Court
for the Northern District of California
No. 4:19-cv-00210-YGR
The Honorable Yvonne Gonzalez Rogers

———————————————————

**PLAINTIFFS-RESPONDENTS' ANSWER IN OPPOSITION TO
DEFENDANT'S PETITION FOR PERMISSION TO APPEAL CLASS
CERTIFICATION DECISION UNDER FED. R. CIV. P. 23(f)**

———————————————————

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................1

I.   FACTS RELEVANT TO THE QUESTION PRESENTED ..........................1

II.  QUESTION PRESENTED TO THE COURT.................................5

III. THE RELIEF SOUGHT ...............................................6

IV.  REASONS WHY THE APPEAL SHOULD NOT BE ALLOWED...........6

   A. The Petition Does Not Establish "Manifest Error."................................6

   B. DeNicolo's Claims are Typical of the Class He Represents........................7

      1. The FDCPA Expressly Provides for Class Actions. ...............................10

      2. DeNicolo's Debt is a Consumer Debt. .....................................13

      3. At Most, the Issue is an Administrative One Appropriate for Usual Court
      Management......................................................15

   C. DeNicolo is an Adequate Class Representative..........................................16

   D. Fox's Claims Are Typical of the Class He Represents. ..............................17

   E. Common Issues Will Predominate ...........................................18

   F. A Class Action is the Superior Method of Resolving These Claims. .........21

CONCLUSION ......................................................................................22

# TABLE OF AUTHORITIES

<u>Cases</u>

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group, L.P.*,
    247 F.R.D. 156 (C.D. Cal. 2007) ........................................................ 17-18

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) ................................................................ 16

*Chamberlan v. Ford Motor Co.*,
    405 F.3d 952 (9th Cir. 2005) .................................................................... 7

*Clark v. Capital Credit & Collection Servs.*,
    460 F.3d 1162 (9th Cir. 2006) ................................................................ 15

*Crawford v. Honig*,
    37 F.3d 485 (9th Cir. 1994) .................................................................... 17

*Datta v. Asset Recovery Solutions, LLC*,
    Case No. 15-CV-00188-LHK, 2016 U.S. Dist LEXIS 36446
    (N.D. Cal. Mar. 18, 2016) ...................................................................... 22

*Evon v. Law Offices of Sidney Mickell*,
    688 F.3d 1015 (9th Cir. 2012) ................................................................ 11

*Gold v. Midland Credit Mgmt.*,
    306 F.R.D. 623 (N.D. Cal. 2014) ................................. 9, 13, 14, 15, 16, 21

*Gonzalez v. Arrow Fin. Servs., LLC*,
    660 F.3d 1055 (9th Cir. 2011) ................................................................ 11

*Gordon v. Sonar Capital Mgmt. LLC*,
    92 F. Supp. 3d 193 (S.D.N.Y. 2015) ...................................................... 18

*Herrera v. LCS Fin. Servs. Corp.*,
    274 F.R.D. 666 (N.D. Cal. 2011) ............................................................ 17

*Holt v. Noble House Hotels & Resort, LTD*,
    No. 17CV2246-MMA (BLM), 2018 U.S. Dist. LEXIS 177940

(S.D. Cal. Oct. 16, 2018) ........................................................ 19

*In re IMAX Secs. Litig.*,
    272 F.R.D. 138 (S.D.N.Y. 2010) .......................................... 18

*Irwin v. Mascott*,
    96 F.Supp.2d 968 (N.D. Cal. 1999) ...................................... 14

*Kesler v. Ikea U.S. Inc.*,
    No. SACV 07-568 JVS RNBX, 2008 U.S. Dist. LEXIS 97555
    (C.D. Cal. Feb. 4, 2008) ........................................................ 18

*Littledove v. JBC & Assocs.*,
    Case No. CIV. S-00-0586 WBS GGH, 2001 U.S. Dist. LEXIS 139
    (E.D. Cal. Jan. 10, 2001) ...................................................... 22

*Maxarz v. Transworld Sys.*,
    193 F.R.D. 46 (D. Conn. 2000) .............................................. 23

*Magallon v. Vital Recovery Servs., LLC*,
    Case No. 16cv02971 JAH-BLM, 2018 U.S. Dist. LEXIS 42943
    (S.D. Cal. Mar. 14, 2018) ...................................................... 22

*McCabe v. Crawford & Co.*,
    272 F. Supp. 2d 736 (N.D. Ill. 2003) ..................................... 20

*Norton v. LVNV Funding, LLC*,
    Case No. 18-cv-05051-DMR, 2020 U.S. Dist. LEXIS 185380
    (N.D. Cal. Oct. 6, 2020) .................................................. 13, 15

*Norton v. LVNV Funding, LLC*,
    No. 20-80149, 2020 U.S. App. LEXIS 39396 (9th Cir. Dec. 15, 2020) . 15

*Romero-Ruiz v. Mukasey*,
    538 F.3d 1057 (9th Cir. 2008) ............................................... 11

*Schaffer v. Litton Loan Servicing, L.P.*,
    Case No. 05-07673 MMM (CTx), 2009 U.S. Dist. LEXIS 133081
    (C.D. Cal. Jan. 20, 2009) ...................................................... 23

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ...................................................................... 24

*Wexler v. AT&T Corp.*,
   323 F.R.D. 128 (E.D.N.Y. 2018) ............................................................... 19

*Zeisel v. Diamond Foods, Inc.*,
   No. C 10-01192, 2011 U.S. Dist. LEXIS 60608 (N.D. Cal. June 7, 2011)
   ………………………………………………………………………………...18

<u>Statutes</u>

15 U.S.C. § 1692k(a)(2)(B) ...................................................................... 10, 11

15 U.S.C. § 1692e(11) ................................................................................... 3

16 U.S.C. § 1692k(a)(2)(B)

Cal. Civ. Code § 1750 ................................................................................... 6

Cal. Civ. Code § 1788.17 .............................................................................. 5

Cal. Civ. Code § 1788.62(b) ....................................................................... 10

**INTRODUCTION**

Defendant-Appellant Viking Client Services, LLC ("Viking") has not met the high burden for interlocutory review of the District Court's approval of Plaintiffs' Ronald G. DeNicolo's and Michael G. Fox's motion for class certification. The District Court neither used the wrong Rule 23 class certification standard nor ignored controlling Ninth Circuit precedent. Rather, Viking's Petition wrongly challenges the District Court's rulings denying Viking summary judgment. As such, Viking's Petition should be denied.

## I.    FACTS RELEVANT TO THE QUESTION PRESENTED

*Viking's Debt-Collection Practices*

Viking began as a collection agency—Viking Collection Service, Inc.—approximately 50 years ago, and found a niche performing collections for car rental agencies.[1] Viking has collected for The Hertz Corporation[2] since at least 2008, initially only for damage claims and then, beginning in 2010, for non-damage claims as well.[3] In 2012, wanting "to take the word 'collection' out of [its] name," Viking changed its name to Viking Client Services, Inc., and approached Hertz about adding "billing services" to the collection work it was already doing.[4]

---

[1] Appx. 255-56, 257, Johnson Tr. 20:11-21:21, 39:2-7.

[2] Hertz was Viking's co-defendant in this action until it filed bankruptcy and was severed from the lawsuit on September 20, 2021. *See* Dkt. # 136.

[3] Appx. 260-61, Johnson Tr. 47:5-6, 130:1-17.

[4] Appx. 257, 260, Johnson Tr. 39:14-41:4, 47:13-16.

1

Despite describing its "billing" and collection work as separate services, they are the same in virtually all respects: the way in which Viking receives notice of new accounts from Hertz; the process for generating letters to Hertz customers; there are Viking agents and managers that work both kinds of accounts; the same database, communications systems, and third-party vendors are used for both; and the collection and "billing" agents all work at the same location.[5]

In fact, the only true distinctions between Viking's "billing" and collection services is (1) that letters sent under the "billing" umbrella omit the disclosures and consumer protection warnings required by the FDCPA and Rosenthal Act, and (2) Viking earns more than a 40% higher contingency rate on the debts it collects under its "collection" umbrella than those it collects under "billing."[6]

*Plaintiff DeNicolo's Claims Against Viking*

Mr. DeNicolo rented a car from Hertz's Thrifty on February 8, 2018, and returned it the next day.[7]  He received no further information regarding this rental for nearly four months.[8]

Viking sent its first letter to Mr. DeNicolo on or around May 29, 2018—109 days after he had returned the rental vehicle.[9]  This letter neither disclosed that

---

[5] Appx. 273, 280-81, Bacon Tr. 29:5-8, 91:16-94:10.

[6] Appx. 274-75, Bacon Tr. 39:6-40:6.

[7] Appx. 5, FAC at ¶¶ 10-11.

[8] *Id*. at ¶ 13.

[9] *Id*. at ¶ 14.

Viking was attempting to collect a debt, nor that any information gathered would be used for that purpose (*i.e.* the "mini-*Miranda*," *see* 15 U.S.C. § 1692e(11)), nor that Mr. DeNicolo could demand verification of the debt, nor that it would be assumed valid unless it was disputed within 30 days.[10]   Instead, the letter demanded immediate payment and falsely implied that Mr. DeNicolo had a limited time to respond: "your payment must be received in our office within 30 days from the date of this letter."[11]

Approximately one week later, Viking sent a second letter, this time stating that it was a debt collector for Hertz.[12]  A month later, Viking sent a third letter which again admitted to being a debt collector, and stated that it was "authorized [by Hertz] to resolve your account for 80% of the current amount due."[13]  Viking sent a fourth letter on or around August 31, 2018, demanding the full amount claimed by Hertz.[14]

During this time, Mr. DeNicolo had called Thrifty (which stated that it had no record of any outstanding payment being owed by him), and then Viking, which sent him the "documents that [Thrifty] had sent over to [Viking]" supposedly substantiating its claims.[15]  The documents provided, however, included terms and

---

[10] *Id.* at ¶ 15.
[11] *Id.*
[12] *Id.* at ¶ 18.
[13] *Id.* at ¶ 19.
[14] *Id.* at ¶ 20.
[15] *Id.* at ¶ 17.

conditions related to rentals in Croatia, a repair estimate dated February 12, 2018, and a "Vehicle Incident Report" claiming that Mr. DeNicolo does not speak English and date-stamped two-days *after* the repair estimate.[16]

Unable to resolve this dispute and facing Viking's repeated attempts to collect a debt for damage he did not cause, Mr. DeNicolo retained an attorney and filed suit challenging Viking's debt-collection practices and seeking declaratory relief. More specifically, Mr. DeNicolo alleged that Viking violated the federal Fair Debt Collection Practices Act 15 U.S.C. § 1692, *et seq*. by waiting more than 30 days to first notify rental-car customers of purported damage claims.

During the discovery process in this litigation, Viking revealed that it had placed calls to Mr. DeNicolo before sending the initial letter. But Viking omits that during these calls its agent never disclosed that (a) he was a Viking employee, (b) Viking was acting on Hertz's behalf, or (c) Hertz alleged that Plaintiff owed money for damage he caused to a rental vehicle.[17] Thus, the *first* time that Plaintiff DeNicolo learned any of these facts was when he received Viking's May 29 letter.[18]

---

[16] *Id*.
[17] Appx. 312-14, DeNicolo Tr. 47-53.
[18] *Id*.

*Plaintiff Fox's Claims Against Viking*

Plaintiff Fox rented a vehicle from Hertz on April 1, 2019 and returned it the next day.[19] On April 26 he received a letter from Viking which did not disclose that Viking was a debt collector, nor did it include the mini-*Miranda* or any of the disclosures required by the FDCPA or California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788.17.[20] He called Hertz to inquire about the letter but was told that it had no record of any outstanding charges related to his rental.[21] He called Viking on May 2, 2019, and spoke to a Viking agent on May 3.[22] Mr. Fox subsequently retained attorneys and alleged that by not including the required disclosures in its initial collections letters Viking violated the Rosenthal Act as well as the California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* and the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*

## II.  QUESTION PRESENTED TO THE COURT

Where a proposed class meets all of the Fed. R. Civ. P. 23(a) & (b) factors and criteria, does the District Court manifestly err by certifying a class over Defendants' already-rejected objections to the underlying merits of the claim?

---

[19] Appx. 9, FAC at ¶¶ 25-26.

[20] *Id.* at ¶ 30.

[21] *Id.* at ¶ 33.

[22] *Id.* at ¶ 34.

## III.   THE RELIEF SOUGHT

This Court should deny the Petition because Viking has identified no deficiencies in the District Court's class certification order—let alone a showing of "manifest error" necessary for permissive interlocutory appeal.

## IV.   REASONS WHY THE APPEAL SHOULD NOT BE ALLOWED

The classes certified by the District Court meet all the Fed. R. 23(a) prerequisites and comfortably fit within the Rule 23(b)(3) category for money-damages class actions. This case is ideally suited for class certification: it involves a uniform, unlawful course of conduct perpetrated by Viking on an already-identified set of class members who were all injured in a uniform manner. The entire case consists of common questions whose common answers are provided by common evidence. It is Viking's template collections letters which form the bases for Plaintiffs' claims: Plaintiffs allege the letters are unlawful, and the causes of action they assert in the First Amended Complaint all stem from that allegation. Because liability will be determined from this common evidence, the proposed classes were properly certified.

### A. The Petition Does Not Establish "Manifest Error."

Ignoring that even Rule 23(f) petitions properly directed at a district court's class certification order "should be granted sparingly…the exception rather than the rule," *Chamberlan v. Ford Motor Co.*, 405 F.3d 952, 959 (9th Cir. 2005), Viking's

Petition cites no legitimate basis to review class certification here. Tellingly, Viking does not even cite *Chamberlan*—the case establishing the standard of review:

> When an error is alleged, we generally will permit an interlocutory appeal only when the certification decision is manifestly erroneous and virtually certain to be reversed on appeal from the final judgment. It is difficult to show that a class certification order is manifestly erroneous unless the district court applies an incorrect Rule 23 standard or ignores a directly controlling case. Class certification decisions rarely will involve legal errors, however, simply because class actions typically involve complex facts that are unlikely to be on all fours with existing precedent.

*Id*. at 962 (internal citations omitted).

Here, Viking provides no basis for why the District Court's decision would be "virtually certain" to be reversed. Viking has not suggested—let alone shown—that the District Court applied an incorrect Rule 23 standard or ignored a directly controlling case. Rather, Viking takes issue with the District Court's legal rulings in denying it summary judgment, and the court's application of the undisputedly correct Rule 23 standards to the specific facts of this case. These merits-based arguments do not establish manifest error in the Rule 23(f) context and were not intended by this Court to be entertained on interlocutory appeal.

## B. DeNicolo's Claims are Typical of the Class He Represents.

Viking's contention that Mr. DeNicolo's debt to Hertz is not a "consumer debt" covered by the FDCPA and thus not typical of the claims of the class, is a legal issue already resolved by the District Court. Indeed, in granting class certification,

the District Court noted it had already rejected this argument at summary judgment and likewise found it did not affect its Rule 23 analysis.[23]

In the District Court, Viking moved for summary judgment, contending there was no material issue of material fact regarding the nature of Mr. DeNicolo's debt and whether it is covered by the FDCPA. Having lost summary judgment—and then reconsideration—Viking argued against class certification by claiming there *is* "a genuine issue of material fact regarding whether the underlying debt is subject to the FDCPA" preventing Mr. DeNicolo from serving as class representative.[24] Now, having lost class certification, Viking seeks a fourth bite at the apple by seeking interlocutory review from this Court on its contradictory arguments regarding Mr. DeNicolo's typicality.[25]

Where class members receive the same collection letters as an FDCPA or Rosenthal Act class representatives, their claims are typical. *See, e.g., Gold v. Midland Credit Mgmt.*, 306 F.R.D. 623, 631-32 (N.D. Cal. 2014) ("Plaintiff alleges that she and each class member were sent an identical and unlawful form collection letter and therefore subjected to the same violations of the FDCPA … As such, the

---

[23] *See* Appx. 622-23 ("As stated in the Court's Order Denying Summary Judgment (Dkt. No. 137), Viking failed to establish that Plaintiff DeNicolo's claim does not concern a covered consumer debt…it does not follow that from Viking's failure to prevail on summary judgment that the covered debt issue is individual to DeNicolo rather than typical of the class.").

[24] Appx. 499.

[25] Viking also contends that this same legal issue—already ruled upon by the District Court— also affects the predominance and superiority prongs of Rule 23(b)(3).

claims of the class representative are typical of the claims of the class").  Here, it is undisputed that members of all three classes received identical letters from Viking: as to the Illinois Resident Class and the California Rental Class in that they were sent collection letters more than 30 days after the purported damage to the rented vehicles that did not contain mini-*Miranda* warnings; and as to California Resident Class in that they did not contain mini-*Miranda* warnings from the outset.  Both Mr. DeNicolo and Mr. Fox received the same letters as members of the classes they represent.  Both Plaintiffs' debts arose from consumer transaction paid for with *personal* credit cards and both were dunned *personally* at home by Viking.  The District Court limited membership in all three classes to claims arising from letter seeking payment for purported damage to vehicles "not rented by or in the name of a business."[26]

As an initial matter, both the FDCPA and Rosenthal Act are remedial consumer-protection laws that expressly provide for class treatment.  *See* 15 U.S.C. § 1692k(a)(2)(B); Civ. Code § 1788.62(b).  These statutes explicitly anticipate that consumers may proceed to class-wide resolution of their common claims without first requiring individualized inquiries of their specific circumstances.  In other words, the consumer-versus-business distinction cannot serve as a threshold barrier

---

[26] Appx. 629.

to invocation of the FDCPA and Rosenthal Act as a matter of law; to hold otherwise would render the debtor-protection laws meaningless.

Second, the debts must be deemed "consumer" in nature. Plaintiffs and class members personally rented cars from Hertz (not in the name of or by a business) and were personally dunned for purported vehicle damage by Viking. That will be true for all members of the classes defined by the District Court—and it is the legality of Viking's uniform collection practices that will predominate.

Third, to the extent determinations of consumer-versus-business purpose must be made for each class member, that is merely an administrative issue that will be addressed through objective drafting of the class definition and notice and, if necessary, a post-trial claims process.

### 1. The FDCPA Expressly Provides for Class Actions.

The Ninth Circuit has repeatedly recognized the broad, remedial purpose of the FDCPA. *Gonzalez v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060-61 (9th Cir. 2011). Where violations have occurred, class certification serves as a deterrent to "other debt collectors who are engaging, or consider engaging in this type of debt collection tactic." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012). Separate from Rule 23, the FDCPA itself provides special rules regarding damages in a class context. *See* 15 USC § 1692k(a)(2)(B). Thus, Congress expressly provided for class actions under the FDCPA—but if courts had

to make individual determinations of the purpose of underlying debts before even considering whether the FDCPA was violated, an FDCPA class could never be certified. Such a result would improperly render that portion of the law "mere surplusage." *Romero–Ruiz v. Mukasey*, 538 F.3d 1057, 1063–64 (9th Cir. 2008).

In addition to its already-rejected assertions regarding the nature of Mr. DeNicolo's debt, Viking also insists that Mr. Fox—whom it does not dispute rented a car as a consumer—may not represent a class of rental car debtors. Critically, Viking thus admits it seeks to bar ***all*** class actions related to car rentals under both the FDCPA and Rosenthal Act. As such, Viking's protestations that Mr. DeNicolo is subject to a "unique defense" (*See, e.g.*, Br. at 9) on the nature of his debt should be disregarded because Viking seeks to apply the same defense against all absent class members. There is nothing "unique" about the defense Viking seeks to deploy against Mr. DeNicolo; Viking tries to use it against all members of all three certified classes. The District Court recognized that "Viking's arguments overreach since they would preclude certification of nearly any class under the FDCPA on the chance that some class members' debts could be construed as a business rather than a consumer debt, a result clearly contrary to the remedial purposes of the statute."[27]

---

[27] Appx. 624.

11

Viking's argument would contravene the express goal of enforcing the FDCPA via class actions. "As other courts have recognized, this dispute will inevitably arise in almost any FDCPA class action (and by extension, cases brought under the Rosenthal Act), so denying class certification on this basis alone would eliminate or severely impair the ability to challenge unfair debt collection practices on a classwide basis." *Norton v. LVNV Funding, LLC*, Case No. 18-cv-05051-DMR, 2020 U.S. Dist. LEXIS 185380, at *35 (N.D. Cal. Oct. 6, 2020); *see also Gold v. Midland Credit Mgmt.*, 306 F.R.D. 623, 630 (N.D. Cal. 2014) (the argument "would effectively eliminate class action litigation under the FDCPA because in all cases, separating out the business debt from the consumer debt would pose a bar to class certification").

There is also no dispute that Viking itself makes no distinction between a "business" or "consumer" purpose in its collection business.[28] *See Norton*, 2020 U.S. Dist. LEXIS 185380 at *37 ("Denying class certification on the basis that debt collection agencies do not collect or maintain evidence about the underlying nature of the debts would only further encourage opaque debt collection practices."); *Gold*, 306 F.R.D. at 630 ("the mere fact that the debt collection agency does not segregate business and consumer debt accounts is not enough to thwart class certification");

---

[28] Appx. 623.

*Irwin v. Mascott*, 96 F. Supp. 2d 968, 973 (N.D. Cal. 1999) ("The fact that defendants do not maintain information that allows a precise determination of the nature of each purchase should not be a bar to proceeding under the FDCPA").

### 2. DeNicolo's Debt is a Consumer Debt.

It is undisputed that Mr. DeNicolo booked the car *in his own name* on his *personal credit card* in an ordinary consumer transaction at the airport. Nor is there any dispute that he was dunned by Viking for purported damage to the vehicle in a personal manner with phone calls to his own phone and collection letters sent to his home. In its bid for reconsideration of its failed summary judgment motion, Viking re-raised the fact that Mr. DeNicolo's employer reimbursed the cost of the car rental. But as the Court below correctly noted, "Viking does not offer any authority suggesting that an employer's reimbursement of the ***rental*** expense would be a dispositive factor for determining whether a debt for the cost of ***damage*** to that car would be a personal or commercial debt under the FDCPA."[29]

To the extent that Viking insists its summary-judgment denial means some ambiguity remains as to the nature of Mr. DeNicolo's debt, courts in this district have declined to impose such stringent proof requirements at class certification—even when it is the nature of the putative class representative's debt that is challenged. In *Norton*, the plaintiff could not even remember how she incurred the

---

[29] Appx. 587 (emphasis in original).

debt, but the fact she incurred it on a credit card was enough for her to represent a class of similarly situated debtors:

> This evidence is sufficient at this stage of [the] litigation to demonstrate that Norton incurred a consumer debt protected by the FDCPA and Rosenthal Act. Later developments might call her testimony into doubt or a factfinder may find that Norton's claim fails on the merits…For the purposes of the current inquiry, Norton has adequately shown that Defendants pursued collection activities against her based on a consumer debt and that this claim is typical of the class.

2020 U.S. District LEXIS 185380 at *26.[30]  In *Gold*, too, the plaintiff could not remember how all the money underlying the debt was spent.  *See* 306 F.R.D. at 631 ("That portions of her debt include cash advances for which she could not recall the purpose does not detract from a common sense inference based on the known nature of Plaintiff's financial obligation.").

Here, the "known nature" of all class members' financial obligations was the same: they personally rented cars from Hertz and were personally dunned for purported vehicle damage by Viking.  The common question of the legality of Viking's uniform method for collecting that debt predominates over all other issues.

---

[30] Notably, this Court denied the *Norton* defendants interlocutory review of the class certification decision.  *Norton v. LVNV Funding, LLC*, No. 20-80149, 2020 U.S. App. LEXIS 39396, at *1 (9th Cir. Dec. 15, 2020).

### 3. At Most, the Issue is an Administrative One Appropriate for Usual Court Management.

Rather than a "threshold issue" affecting standing, Viking has raised merely a surmountable ascertainability issue related to properly identifying class members.[31] Because the Ninth Circuit has determined that this issue is really one of manageability and cannot alone preclude class certification, any administrative concerns are allayed by ensuring the class definition and claim process objectively identify class members. *See Briseno*, 844 F.3d at 1128 ("courts should not refuse to certify a class merely on the basis of manageability concerns") (citation omitted). For example, "the name on each debt account can be used to identify whether the financial obligation was incurred by an individual or business [] and can be easily applied to whittle down the number of potential class members." *Gold*, 306 F.R.D. at 629.

Indeed, the District Court already addressed this issue by amending the class definitions to exclude any "by or in the name of a business." Appx. 628. This administratively simple method of distinguishing non-covered debts will not affect predominance. *See, e.g., Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 680 (N.D. Cal. 2011) ("Even if some individualized inquiry were necessary to discern

---

[31] *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 n.4 (9th Cir. 2017) ("Although the parties here use the word 'ascertainability,' they dispute only whether a class proponent must proffer an administratively feasible way to identify class members.").

facts regarding some class members' loans, this inquiry, along with a single yes-or-no question…does not predominate over the central question of whether Ocwen's communications violate the FDCPA").

### C. Mr. DeNicolo is an Adequate Class Representative

The District Court correctly rejected Viking's argument regarding Mr. DeNicolo's adequacy as class representative. Viking advances the same argument here without legal support and suggests that "[t]his Court should reconsider Mr. DeNicolo's adequacy to act as class representative." Br. at 15. Viking contends that Mr. DeNicolo is not an adequate class representative because he is friends and neighbors with Christopher M. Hack, one of the attorneys at one of the firms representing Plaintiffs in this matter. Br. at 14-15. Contrary to Viking's mischaracterization of the ruling, the District Court did not dismiss the issue "simply because Mr. Hack is not a partner and only 1 of several attorneys from 2 different firms representing plaintiff DeNicolo." *Id*. at 15. Rather, the District Court correctly held that, "in the absence of some evidence to indicate that a friendship between the class representative and one of his attorneys would create a conflict of interest, the court will not presume one."[32]

---

[32] Appx. 627 (*citing Kumar v. Salov N. Am. Corp*., No. 14-CV-2411-YGR, 2016 WL 3844334, at *3 (N.D. Cal. Jul. 15, 2016); *Zeisel v. Diamond Foods, Inc*., No. C 10-01192 JSW, 2011 WL 2221113, at *9 (N.D. Cal. June 7, 2011); *Kesler v. Ikea U.S. Inc*., No. SACV 07-568 JVS RNBX, 2008 U.S. Dist. LEXIS 97555, at *5 (C.D. Cal. Feb. 4, 2008).

As it did in the District Court, Viking here cites only inapposite cases (*See* Br. at 13-14) involving attorneys and plaintiffs who were not just friends but additionally had family and financial ties.[33]  Those additional ties do not exist in this case.  And without "an additional conflict beyond friendship—commonly a financial or familial tie," courts will not declare a class representative inadequate.  *Holt v. Noble House Hotels & Resort, LTD*, No. 17CV2246-MMA (BLM), 2018 U.S. Dist. LEXIS 177940, at *7 (S.D. Cal. Oct. 16, 2018) (*citing Drimmer v. WD-40 Co.*, 343 F. App'x 219, 221 (9th Cir. 2009)).

### D. Fox's Claims Are Typical of the Class He Represents.

The exclusion of "any individual who previously received a legal determination or reached an agreement with Hertz, Dollar or Thrifty regarding the cost and liability of rental car damage" (the "Prior Agreement Exclusion") is an artifact of Mr. DeNicolo's claim under the Illinois Vehicle Code.  *See* Appx. 16-17, FAC, Count III, ¶¶ 65-71 (citing 625 ILCS 5/6-305.2 ("No rental company shall require any payment for damage to the rental vehicle…until after the cost of the

---

[33] In *Gordon v. Sonar Capital Mgmt. LLC*, for instance, the attorney was the cousin and "longtime family attorney" of the plaintiff and had signed a secret fee-sharing pact with lead counsel, concealed it from the judge, and perhaps prompted perjury from the plaintiff at a deposition.  *See* 92 F. Supp. 3d 193, 199 (S.D.N.Y. 2015).  In *In re IMAX Secs. Litig.*, the attorney was a longtime, fee-paying client of the plaintiff's brokerage—and the attorneys' involvement in the case was not disclosed to the Court when lead counsel was appointed.  *See* 272 F.R.D 138, 156 (S.D.N.Y. 2010).  And in *Wexler v. AT&T Corp.*, the attorney in question was the husband of the proposed class representative.  *See* 323 F.R.D. 128, 130 (E.D.N.Y. 2018).

damage to the vehicle and liability therefor is agreed to between the rental company and renter or is determined pursuant to law.")). Specifically, in addition to an FDCPA class of renters who received first notice of damage claims more than 30 days after purportedly incurred, Mr. DeNicolo in the First Amended Complaint sought to also represent a class of Illinois renters having not "previously reached an agreement…regarding the cost and liability of damage, or had those issues determined by law…" Appx. 11, FAC ¶ 36. Count III of the First Amended Complaint was therefore an FDCPA violation premised on the violation of the Illinois Vehicle Code (hereinafter, the "Vehicle Code Claim"). *See McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 748 (N.D. Ill. 2003) (finding that a violation of section 305.2 of the Vehicle Code would violate the FDCPA).

The District Court, however, struck Mr. DeNicolo's Vehicle Code claim—no doubt perceiving it as duplicative of his proposed 30-day Illinois and California FDCPA renter classes. Accordingly, because the Vehicle Code Claim is no longer relevant to the certified classes, the exclusion from the classes that was added to accommodate such a claim is no longer necessary. Likewise, because such a claim— premised on violation of the Illinois Vehicle Code—would only be available to Illinois residents, the related exclusion is particularly inapposite with respect to the certified California Resident Class which Mr. Fox represents.

Clearly, retention of the Prior Agreement Exclusion was a typographical oversight that needs to be corrected by the District Court before notice is sent out. Nor is it the only such issue; the District Court had already identified another such issue that needs to be resolved, post-certification.[34] Accordingly, Plaintiffs intend to request that the District Court strike the exclusionary language from the discarded Vehicle Act claim from the 30-day FDCPA class definitions. This is a simple, administrative matter within the District Court's purview (as with resolution of the temporal scope of each class's claims).

### E. Common Issues Will Predominate

Viking's attack on the District Court's finding of Rule 23(b)(3) predominance simply rehashes its challenge to typicality. After excluding rentals made by or in the name of businesses, the District Court held that "[w]hile those class members whose claims arose from business transactions would be excluded from the classes, such a determination does not change the predominate liability questions framed in the litigation here: whether the standard, uniform collection letters sent by Viking violate the FDCPA and Rosenthal Act."[35]

The common issue in this case is whether the letters sent by Viking to class members are unlawful; that question predominates. *See Littledove v. JBC & Assocs.*,

---

[34] *See* Appx. 628 ("The parties are Ordered to meet and confer and submit and joint statement as to the appropriate temporal limitations on the class definitions.").
[35] Appx. 625.

Case No. CIV. S-00-0586 WBS GGH, 2001 U.S. Dist. LEXIS 139, at *16 (E.D. Cal. Jan. 10, 2001) ("the common questions concerning whether defendants' standardized conduct violates the FDCPA and the CUBPA predominate the action"). Viking's asserted requirement for inquiry into the nature of each class members' debt has been rejected in both the ascertainability and predominance context. *See Magallon v. Vital Recovery Servs., LLC*, Case No. 16cv02971 JAH-BLM, 2018 U.S. Dist. LEXIS 42943, at *15-17 (S.D. Cal. Mar. 14, 2018) ("the Court finds identifying class members by determining whether the debt was a consumer debt is ministerial in nature easily determined by a single yes or no question. This determination does not predominate…"). The argument is particularly disfavored where, as here, debt collectors make no effort to differentiate between the two in their own records:

> The FDCPA applies only to consumer debts, and although the FDCPA disclosures appear on all notices Transworld sends, it apparently collects both consumer and business debts, and does not distinguish between the two in its internal record-keeping. Due to its inability to separate out the FDCPA-protected consumer debtors from non-protected business debts, defendant argues that class certification is inappropriate.
>
> […]
>
> Should a debt collection company as large and as sophisticated as Transworld be able to avoid class action liability by mere fact of inadequate record-keeping, the Congressional purpose behind the statute would indeed be thwarted. Given the number of claims that have been pursued against Transworld and the number of classes that have been certified, defendant's claim that their records are not up to the task of differentiating the debts it collects rings hollow. In addition, any disputes regarding

> whether a particular class member's debt is consumer or
> commercial can be remedied through proper drafting of the claim
> form, and at the damages phase of this case.

*Macarz v. Transworld Sys.*, 193 F.R.D. 46, 57 (D. Conn. 2000); *see also Gold*, 306 F.R.D. at 630 ("[A]s many other courts have determined in considering class certification under the FDCPA, the mere fact that the debt collection agency does not segregate business and consumer debt accounts is not enough to thwart class certification. Moreover, acceptance of Defendants' arguments would effectively eliminate class action litigation under the FDCPA…").

### F. A Class Action is the Superior Method of Resolving These Claims.

Viking thrice-repeated assertion that individual actions would be the superior method of resolving Viking's liability was also correctly rejected when the District Court concluded that "[c]lass treatment will allow the efficient, consistent adjudication of liability based on the uniform collection letters sent by Viking to thousands of individuals."[36] Indeed, "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc*., 97 F.3d 1227, 1234 (9th Cir. 1996). Class actions are particularly well suited for FDCPA cases with many individual claims from common conduct:

> In this case, Defendant's liability will turn on the legality of the
> allegedly defective standardized collection letter sent to
> approximately 10,000 class members. Rather than litigate 10,000

---

[36] Appx. 628.

> individual cases that raise the same questions of law and fact, class litigation would efficiently and consistently adjudicate the issue of Defendants' liability under the FDCPA and the RFDCPA in a single action.

*Datta*, 2016 U.S. Dist. LEXIS 36446 at *21-23.

## CONCLUSION

For all the foregoing reasons, Viking's Petition provides no legitimate basis for review—let alone establish that the District Court manifestly erred in granting Plaintiffs' motion for class certification. This Court should deny Viking's request for interlocutory appeal.

Dated: April 22, 2021                    By:  */s/ Clinton A. Krislov*

Clinton A. Krislov
Christopher M. Hack
KRISLOV & ASSOCIATES, LTD
20 North Wacker Drive, Suite 1006
Chicago, Illinois 60606
Telephone: (312) 606-0500
Facsimile: (312) 739-1098
clint@krislovlaw.com
chris@krislovlaw.com

Lori E. Andrus (SBN 205816)
Leland H. Belew (SBN 293096)
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, California 94104
Telephone: (415) 986-1400
Facsimile: (415) 986-1474
lori@andrusanderson.com
leland@andrusanderson.com

*Attorneys for Plaintiffs and the Class*

**<u>CERTIFICATE OF WORD COUNT</u>**

I certify that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 5(c)(1) and 32(a)(5)(A).  This brief uses a proportional typeface and 14-point font, and contains 5,097 words.

/s/ Christopher M. Hack
Christopher M. Hack
